Kane Moon (SBN 249834)
Allen Feghali (SBN 301080)
Enzo Nabiev (SBN 332118)
Sohyun Oh (SBN 341157)
**MOON & YANG, APC**
1055 W. Seventh St., Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125
E-mail: kane.moon@moonyanglaw.com
E-mail: allen.feghali@moonyanglaw.com
E-mail: enzo.nabiev@moonyanglaw.com
E-mail: julie.oh@moonyanglaw.com

Attorneys for Plaintiffs Jesus Mendoza and
Cesar De La Rosa

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS MENDOZA and CESAR DE LA ROSA, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>MASONITE CORPORATION, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 5:21-cv-00025-SSS-KK<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT**<br><br>Date: March 3, 2023<br>Time: 2:00 p.m.<br>Action Filed: November 17, 2020<br><br>Hon. Sunshine S. Sykes<br>Courtroom 2, 2nd Floor<br>United States Courthouse<br>3470 Twelfth Street<br>Riverside, California 92501 |

# NOTICE OF MOTION

THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on     March 3, 2023    , at 2:00 p.m., in Courtroom 2 of the United States District Court for the Central District of California, Eastern Division, the Honorable Sunshine S. Sykes, presiding, Plaintiffs Jesus Mendoza and Cesar De La Rosa ("Plaintiffs"), on behalf of themselves, the Class, the California Labor Workforce Development Agency, and all others similarly situated, move the Court for preliminary approval of the Class Action and Private Attorneys General Act ("PAGA") Settlement Agreement and Release (the "Settlement Agreement" or the "Settlement," attached as **Exhibit 1** to the accompanying Declaration of Kane Moon).

The Settlement resolves all of the claims in this action on a class basis. In particular, Plaintiffs move for orders:

(1)     Granting preliminary approval of the Settlement;

(2)     Conditionally certifying the Settlement Class for settlement purposes;

(3)     Approving the proposed schedule and procedure for completing the final approval process for the Settlement, including setting the Final Approval Hearing;

(4)     Approving the Class Notice as it pertains to the Class (attached as **Exhibit A** to the Settlement Agreement);

(5)     Preliminarily appointing Moon & Yang, APC as Class Counsel for purposes of this Settlement;

(6)     Preliminarily appointing Jesus Mendoza and Cesar De La Rosa as Class Representatives for purposes of this Settlement;

(7)     Preliminarily appointing and approving Simpluris Class Action Administration ("Simpluris") as the Settlement Administrator for the Class;

(8)     Authorizing the Settlement Administrator to mail and email the

approved Class Notice to the Class as set forth in the Settlement Agreement; and

(9)   Preliminarily approving Class Counsel's request for attorney's fees and costs.

Plaintiffs bring this unopposed Motion pursuant to Federal Rule of Civil Procedure 23(e). The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Kane Moon, the Settlement Agreement attached as Exhibit 1 thereto, the Declaration of Jesus Mendoza, the Declaration of Ceasar De La Rosa, and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Preliminary Approval of Class and PAGA Action Settlement with their moving papers.

Date: January 26, 2023                    Respectfully submitted,


 /s/ Allen Feghali
Kane Moon
Allen Feghali
Enzo Nabiev
Sohyun Oh
Attorneys for Plaintiffs and the Class

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................1

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT..........................2

    A.   Case Background....................................................................................2

    B.   Procedural History.................................................................................3

    C.   Discovery and Investigation...................................................................4

    D.   Mediation..............................................................................................5

III.  KEY TERMS OF THE PROPOSED SETTLEMENT ...............................6

IV.   LEGAL DISCUSSION .........................................................................10

    A.   Legal Standard....................................................................................10

    B.   The Court Should Grant Preliminary Approval of the Settlement
       Because the Settlement Class Meets the Requirement for Class
       Certification........................................................................................11

       1.   The Putative Class Members Are Numerous and Ascertainable .....12

       2.   Plaintiffs' Claims Raise Common Issues of Fact or Law.................12

       3.   Plaintiffs' Claims Are Typical of the Claims of the Class...............12

       4.   Plaintiffs and Their Counsel Can Adequately Represent the Class .12

       5.   The Rule 23(b)(3) Requirements for Class Certification Are Met ..12

    C.   The Court Should Grant Preliminary Approval of the Settlement
       Because the Settlement is Fair, Reasonable, and Adequate ...................10

       1.   The Settlement Is the Product of Discovery, Investigation, and
          Informed and Non-Collusive Arm's Length Negotiations ...............10

       2.   The Strength of Plaintiffs' Case; the Risk, Expense, Complexity,
          and Likely Duration of Further Litigation; and the Risk of
          Maintaining Class-Action Status Throughout Trial ........................11

       3.   The Amount Offered in Settlement Provides Substantial, Certain
          Benefits and Avoids the Risks, Cost, Delay and Burden of Further
          Litigation ......................................................................................12

iii

4.    The Extent of Discovery Completed and the Stage of the Proceedings .......................................................................21

5.    The Experience and Views of Counsel ............................................21

6.    Class Members' Response to the Settlement .....................................22

D.    The Service Awards to Representative Plaintiffs Are Reasonable .........22

E.    The Requested Attorneys' Fees and Costs Are Reasonable ....................23

1.    Class Counsel Will Request an Award of Fees Based on the "Common Fund" Method ...................................................................23

2.    The Requested Fee Award Is in Line with Typical Cases ...............24

3.    The Experience, Reputation, and Ability of Class Counsel, and the Risk Undertaken by Class Counsel Support the Requested Fee Award ..............................................................................................26

F.    The Proposed Notice of Settlement and Claims Process Are Reasonable ................................................................................................28

G.    The Court Should Approve the Proposed Schedule ................................29

V.    CONCLUSION ............................................................................................29

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Jesus Mendoza and Cesar De La Rosa ("Plaintiffs"), on behalf of themselves, and on behalf of the purported Class and Aggrieved Employees, having reached a class-wide settlement with Defendant Masonite Corporation ("Defendant" or "Masonite") (collectively with Plaintiffs, the "Parties"), seek preliminary approval of the Settlement. After nearly two years of litigation, in Riverside Superior Court and thereafter in the District Court for the Central District of California, and following an amendment to the complaint, informal pre-mediation discovery including outreach to class members, and extensive arm's-length negotiations between counsel, the Parties have reached a settlement of the Action, memorialized in the proposed Class Action and PAGA Settlement Agreement and Release (the "Settlement Agreement" or the "Settlement"). *See,* Declaration of Kane Moon ("Moon Decl."), **Exhibit 1** (filed concurrently herewith).

Plaintiffs brought this class and Private Attorneys General Act ("PAGA") action on behalf of approximately 908 current and former hourly, non-exempt employees that worked for Masonite in California (the "Class Members"). Plaintiffs contend that Defendant violated California wage and hour laws by failing to pay all hours worked, failing to pay minimum and regular rate wages, failing to pay overtime compensation, failing to authorize and permit and/or make available meal periods, failing to authorize and permit and/or make available rest periods, failing to timely pay wages upon separation, failing to provide accurate itemized wage statements,  and violating the California Business and Professions Code. Based on the foregoing, Plaintiffs also brought a claim for Civil Penalties under PAGA.

The Settlement resolves the class claims for a total non-reversionary settlement amount of $635,000.00. The Settlement provides excellent average recoveries of approximately $374.01 per Class Member. With this Settlement, the

1

Parties are resolving numerous wage and hour claims unlikely to have been
prosecuted as individual actions. Moreover, Class Counsel has conducted a
thorough investigation into the facts of this case. Based on the foregoing discovery
and their own independent investigation and evaluation, Class Counsel is of the
opinion that the Settlement is fair, reasonable, and adequate. Furthermore, in light
of all known facts and circumstances, the risk of significant delay, trial risk,
appellate risk, the defenses that could be asserted by Defendant both to certification
and on the merits, the Settlement is in the best interests of the Settlement Class
Members. Accordingly, Plaintiffs respectfully request that the Court grant the
requested approval.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    Case Background

Defendant Masonite Corporation a publicly-traded designer, manufacturer,
and distributor of interior and exterior doors for the new construction and repair,
renovation, and remodeling sectors of the residential and non-residential building
construction markets. Plaintiff Mendoza worked for Defendant as an assembler for
approximately 1 year ending in October 2020. Plaintiff De La Rosa worked for
Defendant as a general laborer for approximately 17 years, ending in May 2019.
Both Plaintiffs were classified as non-exempt during the entirety of their
employment and were subjected to the same unlawful labor practices as their
coworkers. *See*, Moon Decl., ¶ 5.

Plaintiffs allege that Plaintiffs and Class Members experienced wage and
hour violations during their employment for Defendant. In particular, Plaintiffs
contend that Defendant required Plaintiffs and Class Members to work off the clock
by requiring employees to wait in line to clock in and undergo mandatory COVID
screenings prior to clocking in. Plaintiffs allege that as a result of this off-the-clock
work, Defendant failed to pay for all hours worked. In addition to claims for unpaid
minimum and overtime wages, Plaintiffs also allege Defendant failed to provide

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA
ACTION SETTLEMENT

1  meal and rest periods, failed to timely pay final wages upon separation, failed to

2  provide accurate itemized wage statements, violated the California Business and

3  Professions Code, and is liable for civil penalties under PAGA. *See*, Moon Decl., ¶¶

4  6-8.

5         Defendant ardently opposes the merits of this case and deny Plaintiffs'

6  allegations. Defendant maintains that Plaintiffs and the putative class members

7  were paid all wages owed, that it complied with all of its meal and rest period

8  obligations, and that Plaintiffs and the putative class members were provided with

9  the opportunity to take all meal and rest periods to which they were entitled.

10 Moreover, to the extent that Plaintiffs received wage statements that were allegedly

11 inaccurate, Defendant asserted that Plaintiffs suffered no actual damage or harm as

12 a result. *See, e.g., Angeles v. U.S. Airways, Inc.* (N.D. Cal. Feb. 19, 2013) No. C 12-

13 05860 CRB, 2013 WL 622032, at *10 ("A plaintiff must adequately plead an injury

14 arising from an employer's failure to provide full and accurate wage statements,

15 and the omission of the required information alone is not sufficient.") *See*, Moon

16 Decl., ¶ 9.

17        With respect to Plaintiffs' claim for waiting time penalties, Defendant

18 alleged that its good-faith belief that it paid all wages precluded the imposition of

19 waiting time penalties since Plaintiffs could not prove that Defendant's alleged

20 failure to pay all final wages at the time of separation was "willful." *See, e.g.,*

21 *Pedroza v. PetSmart, Inc.*, No. ED CV 11–298 GHK (DTBx), 2012 WL 9506073,

22 *5 (C.D. Cal. June 14, 2012). For these reasons, Defendant claimed that it did not

23 engage in any unfair business practices and denied liability under PAGA.

24 Defendant also maintained that Plaintiffs' claims were improper for class treatment.

25 *See*, Moon Decl., ¶ 9.

26        **B.    Procedural History**

27        Because of Defendant's alleged violations of various provisions of the Labor

28 Code, Plaintiffs filed a class action complaint on November 17, 2020, in the

3

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA
ACTION SETTLEMENT

1   Superior Court of California, County of Riverside, Case No. CVRI2101170, which

2   alleged that Defendant: (1) Failed to Pay Minimum and Regular Rate Wages [Cal.

3   Lab. Code §§ 204, 1194, 1194.2, and 1197]; (2) Failed to Pay Overtime

4   Compensation [Cal. Lab. Code §§ 1194 and 1198]; (3) Failed to Provide Meal

5   Periods [Cal. Lab. Code §§ 226.7 and 512]; (4) Failed to Authorize and Permit Rest

6   Breaks [Cal. Lab. Code § 226.7]; (5) Failed to Timely Pay Final Wages at

7   Termination [Cal. Lab. Code §§ 201-203]; (6) Failed to Provide Accurate Itemized

8   Wage Statements [Cal. Lab. Code § 226]; and (7) Engaged in Unfair Business

9   Practices [Cal. Bus. & Prof. Code §§ 17200, et seq.]. On January 7, 2021, this

10  action was removed to the United States District Court, Central District of

11  California, Case No. 5:21-cv-00025-SSS-KK (the "Action").

12      Separately, on March 4, 2021, Plaintiffs filed a PAGA representative action

13  complaint, with a single cause of action for Civil Penalties Under PAGA [Cal. Lab.

14  Code § 2699, et seq.], in the Superior Court of California, County of Riverside,

15  Case No. CVRI2101170 ("PAGA Complaint"). The PAGA Complaint was

16  subsequently dismissed without prejudice, and the PAGA claim was added to the

17  instant action.

18      On November 4, 2021, Plaintiffs amended the complaint in this Action,

19  adding a cause of action for Civil Penalties Under PAGA [Cal. Lab. Code § 2699,

20  et seq.] ("Original Complaint" or the "Complaint").

21  **C.    Discovery and Investigation**

22      Prior to the completion of formal discovery, the Parties agreed to mediate

23  this matter. The Parties agreed to move forward with informal discovery for which

24  the Parties adhered to a protocol for exchanging documents and information before

25  the mediation. Defendant produced a sample of time and pay records for the

26  putative Class Members, as well as policy manuals in effect during the statutory

27  period, and additional documents. Defendant also provided information regarding

28  the total number of current and former employees in its informal discovery

responses. The data provided by Defendant consisted of tens and thousands of time entries and pay records, which was sufficient for Plaintiffs' counsel and expert to assess the strengths and weaknesses of the claims and to perform a thorough damages analysis. *See*, Moon Decl., ¶ 10.

After reviewing the documents regarding Defendant's wage and hour policies and practices, and analyzing Defendant's time and pay records, Class Counsel was able to evaluate the probability of class certification, success on the merits, and Defendant's maximum monetary exposure for all claims. With the aid of a statistics expert retained to analyze the records produced, Class Counsel prepared a damage analysis prior to mediation. Class Counsel also investigated the applicable law regarding the claims and defenses asserted in the litigation. Thus, Plaintiffs and their counsel's familiarity with the facts of the case and the legal issues raised by the pleadings allowed them to act intelligently in negotiating the Settlement. *See*, Moon Decl., ¶ 11.

### D.    Mediation

On July 22, 2022, the Parties participated in private mediation with professional neutral mediator Lisa Klerman, Esq. The settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial. The parties went into the mediation willing to explore the potential for a settlement of the dispute, but each side was also prepared to litigate their or its position through trial and appeal if a settlement had not been reached. After extensive negotiations and discussions regarding the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses, a settlement was reached by the Parties. *See*, Moon Decl., ¶ 12.

After the agreement to settle, counsel for the Parties met and conferred extensively over the detailed terms of the settlement for purposes of finalizing a long-form settlement agreement and corresponding notice documents. Several drafts and revisions were circulated in order to arrive at the final settlement—the Class Action

5

and PAGA Settlement and Release. The Settlement Agreement was fully executed on December 22, 2022. *See*, Moon Decl., ¶ 13, Exhibit 1.

## III.    KEY TERMS OF THE PROPOSED SETTLEMENT

Under the Settlement, Defendant has agreed to pay $635,000.00 to settle all aspects of the Action. This amount is all-inclusive. The Settlement's key terms include the following:

A.    Action: The "Action" means *Jesus Mendoza and Cesar De La Rosa v. Masonite Corporation*, United States District Court Central District of California Case No. 5:21-cv-00025-SSS-KK (originally filed on November 17, 2020 in the Superior Court of California, County of Riverside, Case No. CVRI2000230 and removed to federal court on January 1, 2021) and *Jesus Mendoza v. Masonite Corporation*, filed on March 4, 2021 in the Superior Court of California, County of Riverside, Case No. CVRI2101170.

B.    Class or Class Members: All persons who worked for any Masonite in California as an hourly-paid, non-exempt employees at any time from the end of the release period in *Derrick Byrd v. Masonite Corporation*, United States District Court Case No. 5:16-cv-00035 JGB ("Byrd"), or July 14, 2017, to the date of the Court's order preliminarily approving this Settlement, who do not submit a valid and timely Request for Exclusion. Settlement Agreement ¶ 5.

C.    Class Period: The "Class Period" means the period from July 14, 2017, to the date of the Court's order preliminarily approving the Settlement. *Id.*, ¶ 6.

D.    Workweek: The number of weeks of employment in California for each Class Member as a non-exempt employee during the Class Period. *Id.*, ¶ 31.

E.    PAGA Period: The applicable PAGA limitations period is November 15, 2019, to the date of the Court's order preliminarily approving the

6

Settlement. *Id.*, ¶ 38(a)(ii).

F.    Class Counsel: "Class Counsel" means Moon & Yang, APC. *Id.*, ¶ 2.

G.    Gross Settlement Amount: The non-reversionary Gross Settlement Amount is $635,000.00 and excludes Defendant's employer's taxes. This amount includes the Net Settlement Amount, the Class Representative Enhancement Payments to Plaintiffs, the PAGA Settlement Amount, Settlement Administration Costs to the Settlement Administrator, and Class Counsel's Award. *Id.*, ¶ 13.

H.    Adjustment of Gross Settlement Amount: If, as of the date of Preliminary Approval, the total number of putative Class Members exceeds the original estimates of 908 by more than fifteen percent (15%), then Masonite, at its sole discretion, may adjust the date of the release period. *Id.*, ¶ 41.

I.    Net Settlement Amount: The Net Settlement Amount is the portion of the Gross Settlement Amount remaining after deduction of the approved Class Representative Enhancement Payments, Settlement Administration Costs, the Labor and Workforce Development Agency's ("LWDA") portion of the PAGA Settlement Amount, and Class Counsel Award. The entire Net Settlement Amount will be distributed to Class Members. *Id.*, ¶ 15.

J.    The PAGA Settlement Amount: The Parties agreed that $60,000.00 from the Gross Settlement Amount will be allocated toward penalties under PAGA. *Id.*, ¶ 18. Seventy-five percent (75%) of the PAGA Settlement Amount, or $45,000.00, will be paid to the LWDA, and twenty-five percent (25%), or $15,000.00, will be distributed to Class Members on a pro rata basis based on Workweeks during the PAGA Period. *Id.*, ¶ 38(a).

K.    Class Counsel's Award: "Class Counsel's Award" means attorneys' fees agreed upon by the Parties, subject to Court's approval, for Class Counsel's litigation and resolution of the Action, and reimbursement of all

7

reasonable costs and expenses incurred and to be incurred by Class Counsel in this Action. Under the Settlement, Defendant will not oppose Class Counsel's request for fees of up to 33 1/3% ($211,645.50) of the Gross Settlement Amount, and costs/expenses not to exceed $18,000.00 (together "Class Counsel Award" or "Attorneys' Fees and Costs") subject to the Court finally approving this Settlement and subject to the exhaustion of any and all appeals. *Id.*, ¶ 3.

L.  Class Representative Enhancement Payments: Subject to Court's approval, each named Plaintiff will be paid a Class Representative Enhancement Payment of $5,000.00 in recognition of their effort and work in prosecuting the Action on behalf of Class Members. *Id.*, ¶ 7.

M.  Settlement Administrator: "Settlement Administrator" means Simpluris Class Action Settlement Administration, or any other third-party class action settlement administrator agreed to by the Parties and approved by the Court. *Id.*, ¶ 28. Settlement Administration costs are estimated not to exceed $12,000.00. *Id.*, ¶ 29.

N.  Individual Settlement Payment: "Individual Settlement Payment" means each Class Member's share of the Net Settlement Amount, to be distributed to the Settlement Class. Settlement Agreement ¶ 14. Individual Settlement Payment is calculated by (a) dividing the Net Settlement Amount by the total number of Workweeks worked by all putative Class Members and (b) multiplying the result by each putative Class Member's total number of Workweeks. *Id.*, ¶ 42.

O.  Allocation of Individual Settlement Payment: All Individual Settlement Payments will be allocated as follows: one-third (33 1/3%) as wages, one-third (33 1/3%) as penalties, and the remaining one-third (33 1/3%) as interest. *Id.*, ¶ 55.

P.  Class List and Data: "Class List and Data" is a complete list of all

8

1    Class Members including each Class Member's full name, most recent

2    mailing address, Social Security Number, dates of employment, and the

3    respective number of Workweeks. Defendant will provide the Class List and

4    Data within fourteen (14) calendar days after preliminary approval of the

5    Settlement. *Id.*, ¶ 4.

6    Q.    Release: Upon payment of all funds due and the occurrence of the

7    Effective Date, Plaintiffs and all Class Members who did not opt out will

8    fully release all claims that were alleged or could have been alleged based on

9    the facts and legal theories contained in the Action. *Id.*, ¶¶ 23, 60. Plaintiffs

10    Jesus Mendoza and Cesar De La Rosa agree to a general release from all

11    known and unknown claims they have against the Released Parties. *Id.*, ¶¶

12    36(b), 61.

13    R.    Notice Packet: The Notice of Proposed Class Action Settlement and

14    Final Fairness and Approval Hearing ("Notice" or "Class Notice"),

15    substantially in the form attached as Exhibit A, and an enclosed self-

16    addressed and postage-prepaid (Business Return Mail) envelope. *Id.*, ¶ 17.

17    The Notice sets forth in plain terms, a statement of the case, the terms of the

18    Settlement Agreement, each respective Putative Class Member's total

19    number of Workweeks and estimated Individual Settlement Payment,

20    instructions on how to submit Requests for Exclusion, or objection,

21    workweek dispute procedure, and final approval hearing date. *Id.*, ¶ 47. The

22    Settlement Administrator shall mail a Notice Packet to all putative Class

23    Members via regular First-Class U.S. Mail, within ten (10) calendar days

24    after receiving the Class List and Data from Defendant. If a new address is

25    obtained by a way of a returned Notice Packet, then the Settlement

26    Administrator shall promptly forward the original Notice Packet to the

27    updated address via First-Class U.S. Mail indicating on the original Notice

28    Packet the date of such re-mailing. Where a Notice Packet is returned as

9

undeliverable, without a forwarding address, the Settlement Administrator will perform a computer/SSN and "skip trace" search to obtain an updated address *Id.*, ¶ 46.

S.     Procedure for Disputing Workweeks: Class Members may dispute their number of Workweeks stated in their Notice by submitting a written dispute to the Settlement Administrator prior to the Response Deadline. *Id.*, ¶ 48(a).

T.     Request for Exclusion: Class Members wishing to opt-out from the Settlement Agreement may do so by submitting a written Request for Exclusion to the Settlement Administrator within the Response Deadline. *Id.*, ¶ 49.

U.     Objection to Settlement: Class Members who do not opt out of the Settlement may object to the Settlement by filing a valid Notice of Objection with the Court and serving copies of the Notice of Objection to the Parties' Counsel before Response Deadline. *Id.*, ¶ 51.

V.     Response Deadline: The Response Deadline is thirty (30) calendar days from the initial mailing of the Notice Packet by the Settlement Administrator. The Response Deadline for Requests for Exclusion will be extended ten (10) calendar days for any Class Member who is re-mailed a Notice Packet by the Settlement Administrator. *Id.*, ¶ 27.

W.     No Admission of Liability: Defendant and the Released Parties deny any and all claims alleged in the Action, and the Settlement shall not constitute an admission of any kind by Defendant. *Id.*, ¶¶ 33, 78.

## IV.    LEGAL DISCUSSION

### A.    **Legal Standard**

A certified class action or a class proposed to be certified for purposes of settlement may be settled only with the court's approval. *See,* Fed. R. Civ. P. 23(e). Court approval of a class action settlement requires three steps: (1) preliminary

10

approval of the proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified; and (2) that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(a), (e)(2); *Hanlon*, 150 F.3d at 1020. As discussed below, this class action Settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). Accordingly, the Court should preliminarily approve the Settlement.

**B.** **The Court Should Grant Preliminary Approval of the Settlement Because the Settlement Class Meets the Requirement for Class Certification**

A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all members individually is "impracticable"; (2) questions of law or fact are common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the person representing the class is able to fairly and adequately protect the interests of all members of the class. Fed. R. Civ. P. 23(a). Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Applying this standard, numerous cases similar to this case have certified classes of employees who have suffered wage and hour violations under California wage and hour laws.  Likewise, Plaintiffs contend that the Settlement Class meets all of these requirements.

### 1.  The Putative Class Members Are Numerous and Ascertainable.

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). Courts routinely find numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); R*omero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). "[A] class will be found to exist if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member*." O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

The size of the Class here, which consists of approximately 908 Class Members render the class so large as to make joinder impracticable. *See*, Moon Decl., ¶ 30. Moreover, there is an easily ascertainable class, defined by objective and precise criteria. The Class Members are readily identifiable using specific criteria in the regular business records of Defendant, i.e., job position. As such, the Class is ascertainable.

### 2.  Plaintiffs' Claims Raise Common Issues of Fact or Law.

The commonality requirement of Rule 23(a)(2) "is met if there is at least one common question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Plaintiffs "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common question" can satisfy the commonality requirement of Rule 23(a)(2). *Id*. In the context of wage and hour class actions, a facial challenge to an employer's policy or

12

practice "is a legal question plainly capable of class-wide resolution." *Fodera v. Equinox Holdings, Inc.*, 341 F.R.D. 616, 629 (N.D. Cal. 2022).

Plaintiffs contend that common questions of law and fact predominate here. The wage and hour violations at issue are borne of Defendant's standardized policies, practices, and procedures regarding off-the-clock work and meal and rest breaks that Defendant imposes, creating pervasive issues of fact and law that are amenable to resolution on a class-wide basis. *See*, Moon Decl., ¶ 6. The factual and legal issues are the same for all identified Class Members, including themselves, as Class Members were subject to the same: timekeeping, payroll, compensation, clock in and COVID screening process, and meal and rest period policies and practices. Further, all class members suffered from and seek redress for the same alleged injuries. Plaintiffs' other derivative claims will rise or fall with the primary claims. Considering that Class Members would need to prove the same issues of law and fact to prevail and their legal remedies would be indistinguishable, it would be preferable to resolve all claims through a settlement agreement than to force each Class Member to litigate their own individual claims. Because these questions can be resolved at the same juncture and because common questions of law and fact predominate over any individual questions within the class, the commonality requirement is satisfied for the Class.

### 3. Plaintiffs' Claims Are Typical of the Claims of the Class.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "[A] representative's claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs contend that their claims are typical of those of all other Class Members. Plaintiffs were former employees of Defendant and were subject to the alleged illegal policies and practices that form the basis of the claims asserted in this case. *See*, Moon Decl., ¶ 5. Interviews with Class Members and review of documents

13

and data confirm that the employees throughout California were subjected to the same alleged illegal policies and practices to which Plaintiffs were subjected. Thus, Plaintiffs contend that the typicality requirement is also satisfied.

### 4. Plaintiffs and Their Counsel Can Adequately Represent the Class.

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must show "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469.

Plaintiffs' claims are in line with the claims of the Class Members, and Plaintiffs' claims are not antagonistic to the claims of Class Members. *See*, Declaration of Jesus Mendoza, ¶¶ 8-11; Declaration of Cesar De La Rosa, ¶¶ 8-11; Moon Decl., ¶ 32. In addition, Plaintiffs have diligently prosecuted this case and reviewed the settlement terms, with the interests of the Class Members in mind. *Id.* Plaintiffs' willingness to serve as representatives demonstrates their serious commitment to bringing about the best possible results for the Class. Moreover, Plaintiffs retained Class Counsel who have extensive experience in class action and employment litigation, including wage and hour class actions, and who do not have any conflict with the Class. *See*, Moon Decl., ¶ 63.

### 5. The Rule 23(b)(3) Requirements for Class Certification Are Met.

Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang*, 737 F.3d at 545.

14

Here, Plaintiffs contend the common questions raised in this action predominate over any individualized questions concerning the Class Members. The Class is entirely cohesive because resolution of Plaintiffs' claims hinge on the uniform policies and practices of Defendants, rather than the treatment the Class Members experienced on an individual level. Namely, the predominant questions relate to whether Class Members are entitled to be compensated for the time spent during preliminary activities, such as waiting in line to clock in and undergo COVID screening, and for the missed, interrupted, or shortened meal and rest periods.  As a result, Plaintiffs contend that the resolution of these alleged class claims would be achieved through the use of common forms of proof, such as Defendant's policies and time and pay records, and would not require inquiries specific to individual Class Members.

Further, Plaintiffs contend that the class action mechanism is a superior method of adjudication compared to a multitude of individual suits. To determine whether the class approach is superior, courts are to consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, the Class Members do not have a strong interest in controlling their individual claims. The action involves hundreds of workers with very similar, but relatively small, claims for monetary injury.  If the Class Members proceeded on their claims as individuals, their many individual suits would require duplicative discovery and duplicative litigation, and each Class Member would have to personally participate in the litigation effort to an extent that would never be required in a class proceeding. Thus, Plaintiffs contend that the class action mechanism would efficiently resolve numerous substantially identical claims while avoiding a waste of

judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation and arbitrations.

The Settlement presented by the Parties also provides finality, ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal system with numerous cases. Accordingly, class treatment is efficient and warranted, and the Court should conditionally certify the Class for settlement purposes.

C.    **The Court Should Grant Preliminary Approval of the Settlement Because the Settlement Is Fair, Reasonable, and Adequate**

In deciding whether to approve a proposed class settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Lynn's Food Stores*, 679 F.2d at 1354-55; *Otey*, 2015 WL 6091741, at *4. Included in this analysis are considerations of: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026).

Importantly, courts apply a presumption of fairness, where, as is the case here, "the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the proposed settlement is fair, reasonable, and adequate.

1. **The Settlement Is the Product of Discovery, Investigation, and**

16

**Informed and Non-Collusive Arm's Length Negotiations.**

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where counsel are well-qualified to represent the proposed class in a settlement based on their extensive class action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Here, the settlement was a product of non-collusive, arm's-length negotiations. *See*, Moon Decl., ¶ 12. The Settlement was reached following extensive negotiations after the Parties participated in a lengthy mediation session before Lisa Klerman, Esq., a skilled mediator with many years of experience mediating complex employment matters. *Id*. The settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial. *Id*. The parties went into the mediation willing to explore the potential for a settlement of the dispute, but each side was also prepared to litigate their or its position through trial and appeal if a settlement had not been reached. *Id*.

Prior to reaching this Settlement, Class Counsel conducted informal discovery and investigation into the claims alleged by Plaintiffs, including, among other things, reviewing and analyzing a sample of time and pay records for Class Members as well as the policy manuals in effect during the statutory period, and preparing a damage analysis. *See*, Moon Decl., ¶ 10. Significantly, Class Counsel's calculations are based on the analysis of a statistics expert retained by Class Counsel to analyze the records produced by Defendant. *See*, Moon Decl., ¶ 11. In conjunction with their extensive factual investigation, Class Counsel investigated the applicable law regarding the claims and defenses asserted in the litigation. *Id*. Thus, Plaintiffs and their counsel were able to act intelligently and effectively in negotiating the proposed settlement.

17

*Id*.

The Parties then spent several weeks discussing settlement and negotiating the settlement agreement, with several rounds of edits relating to the terms of the Settlement. Moreover, Plaintiffs are represented by experienced class action litigators who feel strongly that the proposed Settlement achieves an excellent result for the Class Members. Accordingly, Plaintiffs contend that a presumption of fairness applies here.

       **2.**   **The Strength of Plaintiffs' Case; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Risk of Maintaining Class-Action Status Throughout Trial.**

Weighing the significant risks associated with further litigation against the strengths of Plaintiffs' case supports approval of the Settlement here. When a party continues to deny liability, there is an inherent risk in continuing litigation. Getting the case certified and litigating the class action claims, here, would require substantial additional preparation and resources. *See*, Moon Decl., ¶ 31. In this case, Plaintiffs alleged that Defendant required Plaintiffs and the Class Members to work off-the-clock by requiring employees to wait in line to clock in and go through COVID screening, uncompensated. *See*, Moon Decl., ¶ 24. Defendant countered that up until 2020, employees were allowed to clock in 15 minutes before their shift start time, and thus employees did not spend any time waiting in line to clock in. *Id*. With respect to the COVID screenings, Defendant argued that the screening practice was not implemented until 2020, and that employees were not screened for COVID until after they clocked-in and were compensated during their COVID screenings. *Id*. Furthermore, Defendant asserted that Plaintiffs' claim for meal period violations would fail because some Class Members signed meal period waivers, and to those that did not sign a waiver, Defendant paid the required meal period premiums. *See*, Moon Decl., ¶ 26.

While Plaintiffs are confident in their ability to successfully litigate the alleged

18

claims on the merits, the risks of doing so are substantial. In *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 U.S.Dist.LEXIS 44852, at *5 (N.D. Cal. April 21, 2011), the court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also, Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. April 26, 2013) ("[E]ven with a strong case, further litigation would be time-consuming and expensive …). Here, Defendant similarly continues to contest liability and the propriety of class certification, injecting uncertainty and risk in continuing to litigate.

Thus, the Settlement obviates the significant risk that this Court may deny certification of all or some of Plaintiffs' claims. *See*, Moon Decl., ¶ 31.  While Plaintiffs are confident in the merits of their claims, a legitimate controversy exists as to each cause of action. *Id*. Plaintiffs also recognize that proving the amount of wages due to each class member would be an expensive, time-consuming, and uncertain proposition. *Id*. Furthermore, continued litigation would be expensive, involving a trial and possible appeals, and would substantially delay and reduce any recovery by the class. *Id*.

Resolving this case by means of the Settlement will yield a prompt, certain, and substantial recovery for the Class Members. Such a result will benefit the Parties and the court. It will bring finality to years of arduous litigation and will foreclose the possibility of expanding litigation.

### 3. The Amount Offered in Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay and Burden of Further Litigation.

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes […]  Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won

19

had they proceeded with litigation[.]" *Officers for Justice*, 688 F.2d at 624 (citations omitted). Accordingly, the "settlement is not to be judged against a […] speculative measure of what might have been achieved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation omitted).

In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See generally, City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, the value of the Settlement—$635,000.00—is not only fair and reasonable, but an exceptional result, especially in light of the realistic maximum recovery which Plaintiffs estimate to be $761,028.39. *See*, Moon Decl., ¶ 30. As the Settlement amount represents 83.4% of the realistic maximum recovery, the Settlement amount represents a meaningful recovery for Class Members. *Id.*; *See e.g., Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMx)) 2019 U.S.Dist.LEXIS 180474 (C.D.Cal. Oct. 10, 2019), at *21 (finding 10% recovery of the total maximum damages potentially available reasonable in light of the risks of continued litigation).

The proposed settlement of $635,000.00 therefore represents a substantial recovery when compared to Plaintiffs' reasonably forecasted recovery. *See*, Moon Decl., ¶ 31. Because of the proposed Settlement, Class Members will receive timely, guaranteed relief and will avoid the risk of an unfavorable judgment. *Id*. When considering the risks of litigation, including the uncertainties involved in achieving class certification, the burdens of proof necessary to establish liability, the probability of appeal of a favorable judgment, it is clear that the settlement amount of $635,000.00 is within the "ballpark" of reasonableness, and preliminary settlement approval is appropriate. *Id*. Indeed, each Settlement Class Member is eligible to

20

1  receive an average net benefit of approximately $374.01. *See*, Moon Decl., ¶ 30.
2  Considering that the Class Members' average hourly rate is $16.75, the average net
3  benefit is approximately 22.33 hours of work. *Id*.

4  **4. The Extent of Discovery Completed and the Stage of the**
5  **Proceedings**

6  The amount of discovery completed prior to reaching a settlement is important
7  because it bears on whether the parties and the court have sufficient information
8  before them to assess the merits of the claims. *See, e.g., Boyd v. Bechtel Corp.*, 485
9  F.Supp. 610, 617, 625 (N.D. Cal. 1979); *Lewis v. Starbucks Corp.*, No. 2:07-cv-
10 00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal
11 discovery may also assist parties with "form[ing] a clear view of the strengths and
12 weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443,
13 454 (E.D. Cal. 2013).

14 The Parties engaged in extensive discovery that has enabled both sides to
15 assess the claims and potential defenses in this action, including formal and informal
16 written discovery. *See*, Moon Decl., ¶ 10. This allowed the Parties to accurately
17 assess the legal and factual issues that would arise if the case proceeded to trial. *Id*.
18 In addition, in reaching this Settlement, Class Counsel relied on their substantial
19 litigation experience in similar wage and hour class actions. Class Counsel's liability
20 and damages evaluation was premised on a careful and extensive analysis of the
21 effects of Defendant's compensation policies and practices on Class Members' pay.
22 *Id*., ¶ 11. Further, Plaintiffs retained an expert to calculate the damages and penalties
23 analysis for mediation using Defendant's records. *Id*. Ultimately, facilitated by
24 mediator Lisa Klerman, Esq., the Parties used this information and discovery to fairly
25 resolve the litigation. *Id*., ¶¶ 12-13.

26 **5. The Experience and Views of Counsel.**

27 The judgment of experienced counsel regarding the settlement is entitled to
28 great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F.Supp. at 622; *Ellis*, 87 F.R.D.

at 18. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, all Parties agreed that the Settlement was fair, adequate, and reasonable. Plaintiffs' Counsel and Defendant's Counsel each have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one. *See*, Moon Decl., ¶¶ 45-61. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's preliminary approval.

### 6. Class Members' Response to the Settlement.

At final approval, Plaintiffs will inform the Court of any exclusions or objections to the settlement.

### D.    The Service Awards to Representative Plaintiffs Are Reasonable

Named plaintiffs in class action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Here, the requested service payments of up to $5,000 for each Plaintiff are intended to compensate them for the critical role they played in this case, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Class Members. *See*, Moon Decl., ¶ 32. In agreeing to serve as Class representatives, these individuals formally agreed to accept the responsibilities of representing the interests of all Class Members. *Id.* Class Counsel represents that Plaintiffs devoted a great deal of time and work assisting counsel in the case and communicated with counsel very frequently for litigation and to prepare for mediation. *Id.* Thus, this amount is reasonable particularly in light of the substantial benefits Plaintiffs generated for all Class Members. *See*, Moon Decl., ¶¶ 34-35. Defendant does not oppose the requested payments to these representatives as reasonable service awards and in consideration

22

of the full releases given by Plaintiffs. *Id*.

Moreover, the enhancement payments are fair when compared to the payments approved in similar cases. *See, e.g., Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving $15,000 and $10,000 service awards in recent hybrid FLSA/Rule 23 settlement); *Guilbaud v. Sprint/United Management Co., Inc.*, No. 3:13-cv-04357-VC, Dkt. No. 181 (N.D. Cal. Apr. 15, 2016) (approving $10,000 service payments for each class representative in FLSA and California state law representative wage and hour action); *Van Liew v. North Star Emergency Services, Inc., et al.*, No. RG17876878 (Alameda Cty. Super. Ct., Dec. 11, 2018) (approving $15,000 and $10,000 service awards, respectively, to class representatives in California Labor Code wage and hour class action).

### E.    The Requested Attorneys' Fees and Costs Are Reasonable

Under the Settlement, subject to the Court's approval, Defendant agrees not to oppose Class Counsel's request for a percentage of the Gross Settlement Amount, up to 33 1/3% of the Gross Settlement Amount, or $211,645.50, plus reimbursement of costs up to $18,000.00. *See*, Moon Decl., ¶ 36. These requested amounts for attorneys' fees and costs are disclosed to all Class Members in the proposed Notice and are reasonable. Currently, the lodestar of all Plaintiffs' counsel is $154,550.00, which accounts for a current multiplier of 1.34. *See*, Moon Decl., ¶ 40. At final approval, Class Counsel will provide detailed lodestar information to show the requested fee is reasonable under both the percentage method and a lodestar "cross-check."

### 1. Class Counsel Will Request an Award of Fees Based on the "Common Fund" Method.

When a district court exercises diversity jurisdiction over a case consisting of exclusively California claims, as here, California substantive law applies to the calculation of the attorney fee award. *See, Mangold v. Cal. Pub. Utils. Comm'n*, 67

23

F.3d 1470, 1478-1479 (9th Cir. 1995) (finding state law to be applicable in "in determining not only the right to fees, but also the method of calculating the fees."); *see also, Rodriguez v. Disner*, 688 F.3d 645, 653 fn. 6 (9th Cir. 2012) ("If … we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees"); *Gonzalez v. Southern Wine & Spirits of Am., Inc.*, 555 Fed.Appx. 704, 704-705 (9th Cir. 2014) (finding district court abused its discretion in applying federal law instead of California substantive law to the calculation of attorneys' fees, holding that, because the court exercised diversity jurisdiction, California substantive law should have been applied).

Here, Plaintiffs' claims arise exclusively from California law. Accordingly, the Court should apply the method for calculating attorney's fees as set forth by California jurisprudence. *See, e.g., Laffitte v. Robert Half International, Inc.*, 1 Cal.5th 480, 503-506 (2016) (percentage method with a lodestar crosscheck is appropriate in common fund cases). The California Supreme Court in *Laffitte* held that "the percentage method is a valuable tool that should not be denied" by the courts as there are "recognized advantages" such as "relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation." *Id*. at 503.

Furthermore, the use of the percentage method in common fund cases appears to be dominant in the Ninth Circuit. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The advantages of using the percentage method have been described thoroughly by other courts. *See, e.g., In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1374-77 (N.D. Cal. 1989) (collecting authority and describing benefits of the percentage method over the lodestar method).

### 2. The Requested Fee Award Is in Line with Typical Cases.

According to a leading treatise on class actions, "No general rule can be

24

articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." *See*, Conte & Newberg, Newberg on Class Actions (3rd Ed.) § 14.03. Attorneys' fees that are fifty percent of the fund are typically considered the upper limit, with thirty to forty percent commonly awarded in cases where the settlement is relatively small. *See, id.*; *see also, Van Vranken v. Atlantic Richfield Company*, 901 F.Supp. 294 (N.D. Cal. 1995) (stating that most cases where 30-50 percent was awarded involved "smaller" settlement funds of under $10 million.).

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) (citing P*owers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952. However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Id.* (citing *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")).

In California, federal and state courts have customarily approved payments of attorneys' fees amounting to one-third of the common fund in comparable wage and hour class actions. *See, e.g., Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund); *Wren*, 2011 WL 1230826 (approving attorneys' fee award of just under 42% of common fund).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

Here, Class Counsel request attorneys' fees that equal to one-third of the Gross Settlement Amount, which is in line with the prevailing guidelines established in California case law and academic literature and is consistent with awards in California. *See, Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66, n.11 (2008) ("Empirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). Moreover, this percentage of the requested attorneys' fees is also within the typical range of attorneys' fees awarded in the Ninth Circuit.

**3. The Experience, Reputation, and Ability of Class Counsel, and the Risk Undertaken by Class Counsel Support the Requested Fee Award.**

As demonstrated by their past experience in pursuing class actions on behalf of consumers and employees, Class Counsel possess considerable expertise in litigating class actions. *See*, Moon Decl., ¶¶ 45-61. Class Counsel has been involved as lead counsel or co-counsel in several class actions that resulted in millions in recovery. *Id*. Because it is reasonable to compensate class counsel commensurate with their skill, reputation and experience, Class Counsel's requested fee award is supported here.

Class Counsel's experience in wage and hour class actions was integral in evaluating the strengths and weaknesses of the case against Defendant and the reasonableness of the settlement. Practice in the narrow field of wage and hour litigation requires skill and knowledge concerning the rapidly evolving substantive law (state and federal), as well as the procedural law of class action litigation. Based on these and other factors, Class Counsel has frequently received fee awards of this percentage from the gross recovery for the class.

Furthermore, there was no guarantee of compensation or reimbursement. *See*, Moon Decl., ¶¶ 42-43. Rather, counsel undertook all the risks of this litigation on a completely contingent fee basis. *Id*. These risks were front and center. Defendant's

26

vigorous and skillful defense further confronted Class Counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. *Id.*

Nevertheless, Plaintiffs and Class Counsel committed themselves to developing and pressing Plaintiffs' legal claims to enforce the employees' rights and maximize the class recovery. *Id.* During the litigation, counsel had to turn away other less risky cases to remain sufficiently resourced for this one. *Id.* The challenges that Class Counsel had to confront and the risks they had to fully absorb on behalf of the class here are precisely the reasons for multipliers in contingency fee cases. *See, e.g., Noyes v. Kelly Servs., Inc.*, 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed… because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans").

Attorneys who litigate on a wholly or partially contingent basis expect to receive significantly higher effective hourly rates in cases where compensation is contingent on success, particularly in hard-fought cases where, like in the case at bar, the result is uncertain. This does not result in any windfall or undue bonus. In the legal marketplace, a lawyer who assumes a significant financial risk on behalf of a client rightfully expects that his or her compensation will be significantly greater than if no risk was involved (i.e., if the client paid the bill on a monthly basis), and that the greater the risk, the greater the "enhancement." Adjusting court-awarded fees upward in contingent fee cases to reflect the risk of recovering no compensation whatsoever for hundreds of hours of labor simply makes those fee awards consistent with the legal marketplace, and in so doing, helps to ensure that meritorious cases will be brought to enforce important public interest policies and that clients who have meritorious claims will be better able to obtain qualified counsel.

Accordingly, Plaintiffs respectfully request that the Court preliminarily

27

1  approve the attorneys' fees and costs as negotiated by the Parties and requested
2  herein.

3  **F.    The Proposed Notice of Settlement and Claims Process Are**
4  **Reasonable**

5       The Court must ensure that Class Members receive the best notice practicable
6  under the circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S.
7  797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).
8  Procedural due process does not guarantee any particular procedure but rather
9  requires only notice reasonably calculated "to apprise interested parties of the
10 pendency of the action and afford them an opportunity to present their objections."
11 *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v.*
12 *Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). A settlement notice "is satisfactory if it
13 'generally describes the terms of the settlement in sufficient detail to alert those with
14 adverse viewpoints to investigate and to come forward and be heard.'" *Churchill*
15 *Village LLC*, 361 F.3d at 575.

16      The Notice of Settlement, attached as Exhibit A to the Settlement Agreement,
17 is "the best notice practicable." Fed.R.Civ.P. 23(c)(2)(B). All Class Members have
18 been identified and the Notice of Settlement will be mailed directly to each Class
19 Member. *See*, Settlement Agreement, Ex. A, "Notice of Class Action and PAGA
20 Settlement and Release." As the Notice will be provided by direct mailing, the best
21 possible form of notice under the circumstances, the proposed Notice plan satisfies
22 due process. Furthermore, the proposed Notice is clear and straightforward, and
23 provides information on the nature of the action and the proposed, the terms and
24 provisions of the Settlement Agreement, and the monetary awards that the Settlement
25 will provide Class Members. *Id*. It makes clear that the Settlement Agreement does
26 not constitute an admission of liability by Defendant, who deny all liability, and it
27 recognizes that this Court has not ruled on the merits of the action. *Id*. It also states
28 that the final settlement approval decision has yet to be made. *Id*.

The Notice of Settlement clearly explains the procedures and deadlines for requesting exclusion from the Settlement and objecting to the Settlement, as well as the consequences of taking or foregoing the various options available to Class Members, and the date, time and place of the Final Approval Hearing. *Id*. Pursuant to Rule 23(h), the proposed Notice of Settlement also sets forth the amount of attorneys' fees and costs sought by Plaintiffs. Accordingly, the Notice of Settlement complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See* Conte, Newberg on Class Actions, §§ 8.21 and 8.39 (3rd Ed. 1992); Manual for Complex Litigation, Certification Notice, § 21.311; Settlement Notice, § 21.312 (4th ed. 2004).

Because the proposed Notice of Settlement clearly and concisely describes the terms of the Settlement and the awards and obligations for Class Members who participate, and because the Notice will be disseminated in a way calculated to provide notice to as many Class Members as possible, the Notice of Settlement should be preliminarily approved.

### G.    The Court Should Approve the Proposed Schedule

The last step in the settlement approval process is to hold a Final Approval Hearing at which the court will hear argument and make a final decision about whether to approve the Settlement pursuant to Rule 23(e)(3).    *See*, Manual for Complex Litigation, supra, at §21.63.    Plaintiffs have submitted a proposed order setting forth the proposed schedule of events from here through final approval. *See*, [Proposed] Order. Plaintiffs submit that the proposed schedule complies with Rule 23 and secures the benefits for Class Members in a timely fashion.

### V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement and set a Final Approval Hearing.

//

//

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA
ACTION SETTLEMENT

Respectfully submitted,

Dated: January 26, 2023                    **MOON & YANG, APC**


By: */s/ Allen Feghali*
    Kane Moon
    Allen Feghali
    Enzo Nabiev
    Sohyun Oh
    Attorneys for Plaintiffs

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT