Kane Moon (SBN 249834)
Allen Feghali (SBN 301080)
Enzo Nabiev (SBN 332118)
Sohyun Oh (SBN 341157)
**MOON & YANG, APC**
1055 W. Seventh St., Suite 1880
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125
E-mail: kane.moon@moonyanglaw.com
E-mail: allen.feghali@moonyanglaw.com
E-mail: enzo.nabiev@moonyanglaw.com
E-mail: julie.oh@moonyanglaw.com

Attorneys for Plaintiffs Jesus Mendoza and Cesar De La Rosa

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS MENDOZA and CESAR DE LA ROSA, individually, and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>vs.<br><br>MASONITE CORPORATION, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>*Defendants*. | Case No.: 5:21-cv-00025-SSS-KK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          July 28, 2023<br>Time:          2:00 p.m.<br>Action Filed:  November 17, 2020<br><br>Hon. Sunshine S. Sykes<br>Courtroom 2, 2nd Floor<br>United States Courthouse<br>3470 Twelfth Street<br>Riverside. California 92501 |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 28, 2023, at 2:00 p.m., in Courtroom 2 of the United States District Court for the Central District of California, Eastern Division, the Honorable Sunshine S. Sykes, presiding, Plaintiffs Jesus Mendoza and Cesar De La Rosa ("Plaintiffs"), on behalf of themselves, the Class, the California Labor Workforce Development Agency, and all others similarly situated, move the Court for preliminary approval of the Class Action and Private Attorneys General Act ("PAGA") Settlement Agreement and Release (the "Settlement Agreement" or the "Settlement," attached as Exhibit 1 to the accompanying Declaration of Kane Moon).

Specifically, Plaintiffs move for an order to:

(1) Appointing Plaintiffs as Class Representatives for settlement purposes;

(2) Appointing Moon & Yang, APC as Class Counsel for settlement purposes;

(3) Appointing Simpluris Class Action Settlement Administration as Settlement Administrator;

(4) Approving the Settlement as fair and reasonable under Rule 23(e) of the Federal Rules of Civil Procedure, including the amount of the settlement; the amount of distributions to class members; the settlement administration costs; and the amounts allocated to the enhancement payments and attorney's fees and costs;

(5) Certifying the Class for settlement purposes;

(6) Finding that Class Members were given adequate notice of the Settlement and, in a reasonable manner, advised of their right to participate in the Settlement, object to the Settlement, or exclude themselves from the Settlement;

(7) Directing the clerk of the Court to enter the Order as a Final Judgment; and

(8)    Reserving continuing jurisdiction over the Parties, without affecting the finality of the Final Judgment, for purposes of implementing, enforcing, and administering the Settlement or terms of the Final Judgment.

Plaintiffs' motion is based on this Notice, the following Memorandum of Points and Authorities, the Declaration of Kane Moon, the Settlement Agreement attached as Exhibit 1 thereto, the Declaration of Jesus Mendoza, the Declaration of Ceasar De La Rosa, the Declaration of Stephen Gomez, and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Final Approval of Class Action Settlement with their moving papers.

As this Motion, and the relief sought, is consistent with the provisions of the Joint Stipulation of Class Action and PAGA Settlement and Release, it is not opposed.

Respectfully submitted,

Dated:  June 30, 2023          **MOON & YANG, APC**

By:_/s/ Allen Feghali_____
Kane Moon
Allen Feghali
Enzo Nabiev
Sohyun Oh

Attorneys for Plaintiffs

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.   INTRODUCTION.............................................................................................1

II.  THE NOTICE PROCESS WAS SUCCESSFULLY COMPLETED AFTER
     PRELIMINARY APPROVAL ......................................................................2

III. SUMMARY OF SETTLEMENT TERMS ...................................................3

IV.  BACKGROUND............................................................................................8

     A.  Plaintiffs' Claims............................................................................. 8

     B.  Procedural History............................................................................9

     C.  Pre-Mediation Data Production and Analysis.........................10

     C.  Mediation and Settlement ............................................................11

V.   THE SETTLEMENT MERITS FINAL APPROVAL................................. 11

     A.  Plaintiffs' Claims Merit Class Action Treatment for Settlement
         Purposes .........................................................................................13

         1.   Numerosity ...........................................................................13

         2.   Commonality and Predominance of Common Issues ......................14

         3.   Typicality.............................................................................15

         4.   Adequate Representation....................................................16

         5.   Superiority ...........................................................................16

     B.  The Settlement Falls Squarely Within the Range of Reasonableness
         and Should Be Finally Approved............................................18

         1.   The Value of the Settlement to Class Members Is Fair, Reasonable
              and Adequate .......................................................................19

         2.   The Agreed Upon Fees and Costs Are Reasonable..........................24

              a)  Plaintiffs seek reasonable fees...................................24

              b)  Plaintiffs seek only actual costs................................25

         3.   The Service Payments Are Reasonable.............................25

         4.   The Costs of Administration Are Reasonable ..................26

VIII. CONCLUSION ....................................................................................................... 26

TABLE OF AUTHORITIES

**FEDERAL DECISIONAL AUTHORITY**

*Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. 2007)........................................12

*Angeles v. U.S. Airways, Inc.,* 2013 WL 622032243 F.R.D. 377 (N.D. Cal. 2013)..........9

*Armstrong v. Board of School Directors of the City of Milwaukee*,

    616 F.2d 305 (6th Cir. 1980) ................................................................... 12, 13

*Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598 (N.D. Cal. 1993) ............13

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)................................................. 13, 14, 15

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,

    917 F.2d 1171 (9th cir. 1990)........................................................................15

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,

    244 F.3d 1152 (9th Cir. 2001) .................................................................. 14, 17

*Dilts v. Penske Logistics, LLC,* 2014 WL 205039 (S.D. Cal. 2014) ...............................20

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ..........................................................13

*Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747 (M.D. Fla. 1998)....................17

*Hammon v. Barry*, 752 F.Supp 1087 (DDC 1990)...........................................................19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...........................12, 14, 15, 16

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)........................................15

*In re Armored Car Anti-Trust Litigation*, 472 F.Supp 1357 (ND GA 1979)..................19

*In re Computer Memories Sec. Litig.*, 111 F.R.D. 675 (N.D. Cal. 1986) .......................13

*In re Immune Response Securities Litigation*,

    497 F.Supp.2d 1166 (S.D. Cal. 2007)....................................................... 19, 20

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997)..............25

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001)....................................25

*Lewis v. Gross*, 663 F.Supp. 1164 (E.D.N.Y. 1986) .......................................................13

*Linney v. Cellular Alaska Partnership*, 1997 WL 450064 (N.D. Cal. 1997) .......... 19, 20

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*,

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT**

834 F.2d 677 (7th Cir. 1987) ..........................................................................18

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ..........................................................................18

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ........................24

*Pedroza v. PetSmart, Inc.*, 2012 WL 9506073 (C.D. Cal. 2012) ......................................9

*Pridd v. Edelman*, 883 F.2d 438 (6th Circuit 1989) ......................................................18

*Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D. Ill. 1986) ..............................................13

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .........24

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*,
79 F.R.D. 571 (ED PA 1978) .........................................................................19

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................. 12, 13, 18

*Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688 (M.D. Fla. 2005) ............17

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996) ............................................17

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) .....................................11

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) .........................25

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ..........................................24

*Wang v. Chinese Daily News*, 231 F.R.D. 602 (C.D. Cal. 2005) .............................. 13, 15

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188 (9th Cir. 2001) .....................15

**CALIFORNIA DECISIONAL AUTHORITY**

*Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1 (2014) .......................................................20

*Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004 (2012) .........................................23

**STATUTES**

Labor Code § 2699 .........................................................................................20

**RULES**

Fed. R. Civ. P. 23 ............................................................................................ passim

**TREATISES**

*Manual for Complex Litigation Second* § 30.44 (1985).....................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    <u>INTRODUCTION</u>

This is a putative wage and hour class action on behalf of non-exempt employees employed by Defendant Masonite Corporation ("Masonite") at any time from July 14, 2017 through April 12, 2023.  The core issues in the case were based on allegations by named Plaintiffs JESUS MENDOZA and CESAR DE LA ROSA ("Plaintiffs") that Defendant did not pay all wages owed, did not provide legally compliant meal periods and rest breaks, did not compensate employees for all time worked, and, as a result, wage statements provided to employees were rendered inaccurate, final wages were not timely paid, and the conduct violated the California Private Attorneys General Act of 2004 ("PAGA") and the Unfair Competition Law ("UCL").  Defendant disputes these claims.

The case was thoroughly investigated by all Parties.  Following the production of policy documents, time records, and pay data, and vigorous negotiation at mediation, Plaintiffs and Defendant (Plaintiffs and Defendant collectively referred to herein as the "Parties") reached a proposed class action and PAGA action settlement ("Settlement") valued at $635,000.00 for the 936 members[1] of the putative class. The Court granted preliminary approval (Dkt. No. 47), and the notice process was then completed successfully.

The Parties believe the Settlement to be fair and reasonable, to adequately reflect the potential liability and substantial risks in this matter, and to be the result of thorough factual and legal analyses and arm's-length negotiations.  Through this Motion, Plaintiffs request certification of a Settlement Class pursuant to Fed. R. Civ. P. 23 and final approval of the proposed class action settlement.

---

[1] Included in the putative Class are 938 Class Members. However, two Class Members submitted a request for exclusion; therefore, the Settlement Class consists of 936 participating Class Members.

## II.    THE NOTICE PROCESS WAS SUCCESSFULLY COMPLETED AFTER PRELIMINARY APPROVAL

The Parties have fulfilled the class notice procedures set forth in the Court's Preliminary Approval Order and the Class Members' responses have been overwhelmingly positive.  The claims administrator, Simpluris Class Action Settlement Administration ("Settlement Administrator" or "Simpluris"), sent individual notices to 938 Class Members on May 10, 2023.  *See*, Declaration of Stephen Gomez ("Gomez Decl."), ¶ 8.  The list of Class Members utilized by Simpluris was prepared by (1) obtaining a list of Class Members from Defendant, and (2) updating all addresses through the National Change of Address System.  *See*, Gomez Decl., ¶¶ 6-7.  Address traces were performed, and updated addresses were obtained for 63 of the 72 returned packets.  *See*, Gomez Decl., ¶ 9.  Ultimately, nine (9) Notices were undeliverable because current addresses could not be located even after using consumer databases to search for current addresses.  *See, id*. The best Notice practicable was provided.

*Only two* Class Members have submitted valid requests for exclusion, representing 0.21% of the Class. *See*, Gomez Decl., ¶ 14. Six Class Members objected to the Settlement.  *See*, Gomez Decl., ¶ 15. However, as evidenced by the Objection Forms submitted, these objections are likely due to the objecting Class Members' misunderstanding of the purpose of the Objection Form or confusing the Objection Form as a claim form. For example, two out of the six Objection Forms submitted do not state any basis or reason for objecting to the Settlement. *See*, Gomez Decl., ¶ 15, Ex. C. The other four Objection Forms state the Class Members' experience working for Defendant and its wage and hour practices that the Class Member suspects to be unlawful. *See, id*. For instance, all four Objection Forms indicate that the Class Members' paychecks did not accurately reflect their hours worked. *See, id*. Accordingly, it is likely that these Class Members did not intend to object to the Settlement.

## III.    SUMMARY OF SETTLEMENT TERMS

The full terms of the settlement are set forth in the Settlement.  The primary material terms are as follows:

(a)    Action: The "Action" means *Jesus Mendoza and Cesar De La Rosa v. Masonite Corporation*, United States District Court Central District of California Case No. 5:21-cv-00025-SSS-KK (originally filed on November 17, 2020 in the Superior Court of California, County of Riverside, Case No. CVRI2000230 and removed to federal court on January 1, 2021) and *Jesus Mendoza v. Masonite Corporation*, filed on March 4, 2021 in the Superior Court of California, County of Riverside, Case No. CVRI2101170. *See*, Settlement, ¶ 1.

(b)    Class or Class Members: All persons who worked for Masonite in California as an hourly-paid, non-exempt employees at any time from July 14, 2017, through April 12, 2023 ("Class Period"), who do not submit a valid and timely Request for Exclusion. *See*, Settlement, ¶ 5.

(c)    Workweek:  The number of weeks of employment in California for each Class Member as a non-exempt employee during the Class Period. *See*, Settlement, ¶ 31.

(d)    PAGA Period: The applicable PAGA limitations period is November 15, 2019, to the date of the Court's order preliminarily approving the Settlement. *See*, Settlement, ¶ 38(a)(ii).

(e)    Class Counsel: "Class Counsel" means Moon & Yang, APC. *See*, Settlement, ¶ 2.

(f)    Gross Settlement Amount: The non-reversionary Gross Settlement Amount is $635,000.00 and excludes Defendant's employer's taxes. This amount includes the Net Settlement Amount, the Class Representative Enhancement Payments to

Plaintiffs, the PAGA Settlement Amount, Settlement Administration Costs to the Settlement Administrator, and Class Counsel's Award. *See*, Settlement, ¶ 13.

(g)    Adjustment of Gross Settlement Amount: If, as of the date of Preliminary Approval, the total number of putative Class Members exceeds the original estimates of 908 by more than fifteen percent (15%), then Masonite, at its sole discretion, may adjust the date of the release period. *See*, Settlement, ¶ 41.

(h)    Net Settlement Amount: The Net Settlement Amount is the portion of the Gross Settlement Amount remaining after deduction of the approved Class Representative Enhancement Payments, Settlement Administration Costs, the Labor and Workforce Development Agency's ("LWDA") portion of the PAGA Settlement Amount, and Class Counsel Award. The entire Net Settlement Amount will be distributed to Class Members. *See*, Settlement, ¶ 15.

(i)    The PAGA Settlement Amount: The Parties agreed that $60,000.00 from the Gross Settlement Amount will be allocated toward penalties under PAGA. *See*, Settlement, ¶ 18. Seventy-five percent (75%) of the PAGA Settlement Amount, or $45,000.00, will be paid to the LWDA, and twenty-five percent (25%), or $15,000.00, will be distributed to Class Members on a pro rata basis based on Workweeks during the PAGA Period. *See*, Settlement, ¶ 38(a).

(j)    Class Counsel's Award: "Class Counsel's Award" means attorneys' fees agreed upon by the Parties, subject to Court's approval, for Class Counsel's litigation and resolution of the Action, and reimbursement of all reasonable costs and expenses

1    incurred and to be incurred by Class Counsel in this Action.

2    Under the Settlement, Defendant will not oppose Class Counsel's

3    request for fees of up to 33 1/3% ($211,645.50) of the Gross

4    Settlement Amount, and costs/expenses not to exceed $18,000.00

5    (together "Class Counsel Award" or "Attorneys' Fees and

6    Costs") subject to the Court finally approving this Settlement and

7    subject to the exhaustion of any and all appeals. *See*, Settlement,

8    ¶ 3. Class Counsel's costs are approximately $15,625.40 at this

9    time. *See*, Declaration of Kane Moon ("Moon Decl."), ¶ 18, Ex.

10    4.

11    (k)    Class Representative Enhancement Payments: Subject to Court's

12    approval, each named Plaintiff will be paid a Class

13    Representative Enhancement Payment of $5,000.00 in

14    recognition of their effort and work in prosecuting the Action on

15    behalf of Class Members. *See*, Settlement, ¶ 7.

16    (l)    Settlement Administrator: "Settlement Administrator" means

17    Simpluris Class Action Settlement Administration ("Simpluris"),

18    the third-party class action settlement administrator agreed to by

19    the Parties, subject to approval by the Court. *See*, Settlement, ¶

20    28. Settlement Administration costs are estimated not to exceed

21    $12,000.00. *Id.*, ¶ 29. Currently, the Settlement Administration

22    Costs are estimated to be $11,857.00. *See*, Moon Decl., ¶ 19, Ex.

23    5.

24    (m)    Individual Settlement Payment: "Individual Settlement Payment"

25    means each Class Member's share of the Net Settlement Amount,

26    to be distributed to the Settlement Class. *See*, Settlement, ¶ 14.

27    Individual Settlement Payment is calculated by (a) dividing the

28    Net Settlement Amount by the total number of Workweeks

worked by all putative Class Members and (b) multiplying the result by each putative Class Member's total number of Workweeks. *Id.*, ¶ 42.

(n)  <u>Allocation of Individual Settlement Payment</u>: All Individual Settlement Payments will be allocated as follows: one-third (33 1/3%) as wages, one-third (33 1/3%) as penalties, and the remaining one-third (33 1/3%) as interest. *See*, Settlement, ¶ 55.

(o)  <u>Release</u>: Upon payment of all funds due and the occurrence of the Effective Date, Plaintiffs and all Class Members who did not opt out will fully release all claims that were alleged or could have been alleged based on the facts and legal theories contained in the Action. *See*, Settlement, ¶¶ 23, 60. Plaintiffs Jesus Mendoza and Cesar De La Rosa agree to a general release from all known and unknown claims they have against the Released Parties. *Id.*, ¶¶ 36(b), 61.

(p)  <u>Released Parties</u>: Released Parties are Masonite, and its past and present officers, directors, employees, and agents. *See*, Settlement, ¶ 25.

(q)  <u>Notice</u>:  The notice of the proposed Settlement ("Notice" or "Class Notice"), in the form attached as Exhibit A to the Settlement, sets forth in plain terms, a statement of the case, the terms of the Settlement Agreement, each respective Putative Class Member's total number of Workweeks and estimated Individual Settlement Payment, instructions on how to submit Requests for Exclusion, or objection, workweek dispute procedure, and final approval hearing date. *See*, Settlement, ¶ 47. The Notice includes an Objection Form and a Request for Exclusion Form. *See*, Settlement, ¶ 17, Ex. A.

(r)  <u>Procedure for Disputing Workweeks</u>: Class Members may

dispute their number of Workweeks stated in their Notice by submitting a written dispute to the Settlement Administrator prior to the Response Deadline. *See*, Settlement, ¶ 48(a).

(s)    Request for Exclusion: Class Members wishing to opt-out from the Settlement Agreement may do so by submitting a written Request for Exclusion or the Request for Exclusion Form to the Settlement Administrator within the Response Deadline. *See*, Settlement, ¶ 49; ¶ 17, Ex. A.

(t)    Objection to Settlement: Class Members who do not opt out of the Settlement may object to the Settlement by filing a valid Notice of Objection with the Court and serving copies of the Notice of Objection to the Parties' Counsel before Response Deadline. *See*, Settlement, ¶ 51. Class Members may use the Objection Form enclosed in the Notice. *See*, Settlement, ¶ 17, Ex. A.

(u)    Response Deadline: The Response Deadline is thirty (30) calendar days from the initial mailing of the Notice Packet by the Settlement Administrator. The Response Deadline for Requests for Exclusion will be extended ten (10) calendar days for any Class Member who is re-mailed a Notice Packet by the Settlement Administrator. *See*, Settlement, ¶ 27. The Response Deadline was June 9, 2023. *See*, Gomez Decl., ¶ 13.

(v)    No Admission of Liability: Defendant and the Released Parties deny any and all claims alleged in the Action, and the Settlement shall not constitute an admission of any kind by Defendant. *See*, Settlement, ¶¶ 33, 78.

(w)    Uncashed Checks:  Any settlement checks that are mailed to the Class Members and remain uncashed after 180 days of the date of issuance

will be cancelled and shall be transmitted to the California State Controller's Office for Unclaimed Property in the name of each Class Member who failed to cash their Settlement Payment check prior to the void date. *See*, Settlement, ¶ 53.

## IV.    BACKGROUND

### A.    Plaintiffs' Claims

Defendant Masonite Corporation a publicly-traded designer, manufacturer, and distributor of interior and exterior doors for the new construction and repair, renovation, and remodeling sectors of the residential and non-residential building construction markets. *See*, Moon Decl., ¶ 5. Plaintiff Mendoza worked for Defendant as an assembler for approximately 1 year ending in October 2020. *Id.* Plaintiff De La Rosa worked for Defendant as a general laborer for approximately 17 years, ending in May 2019. *Id.* Both Plaintiffs were classified as non-exempt during the entirety of their employment and were subjected to the same unlawful labor practices as their coworkers. *Id.*

Plaintiffs allege that Plaintiffs and Class Members experienced wage and hour violations during their employment for Defendant. *See*, Moon Decl., ¶ 6. In particular, Plaintiffs contend that Defendant required Plaintiffs and Class Members to work off the clock by requiring employees to wait in line to clock in and undergo mandatory COVID screenings prior to clocking in. *Id.* Plaintiffs allege that as a result of this off-the-clock work, Defendant failed to pay for all hours worked. *Id.* In addition to claims for unpaid minimum and overtime wages, Plaintiffs also allege Defendant failed to provide meal and rest periods, failed to timely pay final wages upon separation, failed to provide accurate itemized wage statements, violated the California Business and Professions Code, and is liable for civil penalties under PAGA. *See*, Moon Decl., ¶¶ 6-8.

Defendant ardently opposes the merits of this case and deny Plaintiffs' allegations. *See*, Moon Decl., ¶ 9. Defendant maintains that Plaintiffs and the

putative class members were paid all wages owed, that it complied with all of its

meal and rest period obligations, and that Plaintiffs and the putative class members

were provided with the opportunity to take all meal and rest periods to which they

were entitled. *Id.* Moreover, to the extent that Plaintiffs received wage statements

that were allegedly inaccurate, Defendant asserted that Plaintiffs suffered no actual

damage or harm as a result. *See, e.g., Angeles v. U.S. Airways, Inc.* (N.D. Cal. Feb.

19, 2013) No. C 12-05860 CRB, 2013 WL 622032, at *10 ("A plaintiff must

adequately plead an injury arising from an employer's failure to provide full and

accurate wage statements, and the omission of the required information alone is not

sufficient.") *See*, Moon Decl., ¶ 9.

With respect to Plaintiffs' claim for waiting time penalties, Defendant alleged

that its good-faith belief that it paid all wages precluded the imposition of waiting

time penalties since Plaintiffs could not prove that Defendant's alleged failure to pay

all final wages at the time of separation was "willful."  *See, e.g., Pedroza v.

PetSmart, Inc.*, No. ED CV 11–298 GHK (DTBx), 2012 WL 9506073, *5 (C.D. Cal.

June 14, 2012). For these reasons, Defendant claimed that it did not engage in any

unfair business practices and denied liability under PAGA. Defendant also

maintained that Plaintiffs' claims were improper for class treatment. *See*, Moon

Decl., ¶ 9.

**B.    Procedural History**

Because of Defendant's alleged violations of various provisions of the Labor

Code, Plaintiffs filed a class action complaint on November 17, 2020, in the Superior

Court of California, County of Riverside, Case No. CVRI2101170, which alleged

that Defendant: (1) Failed to Pay Minimum and Regular Rate Wages [Cal. Lab. Code

§§ 204, 1194, 1194.2, and 1197]; (2) Failed to Pay Overtime Compensation [Cal.

Lab. Code §§ 1194 and 1198]; (3) Failed to Provide Meal Periods [Cal. Lab. Code

§§ 226.7 and 512]; (4) Failed to Authorize and Permit Rest Breaks [Cal. Lab. Code §

226.7]; (5) Failed to Timely Pay Final Wages at Termination [Cal. Lab. Code §§

201-203]; (6) Failed to Provide Accurate Itemized Wage Statements [Cal. Lab. Code § 226]; and (7) Engaged in Unfair Business Practices [Cal. Bus. & Prof. Code §§ 17200, et seq.]. On January 7, 2021, this action was removed to the United States District Court, Central District of California, Case No. 5:21-cv-00025-SSS-KK (the "Action"). *See*, Moon Decl., ¶ 7.

Separately, on March 4, 2021, Plaintiffs filed a PAGA representative action complaint, with a single cause of action for Civil Penalties Under PAGA [Cal. Lab. Code § 2699, et seq.], in the Superior Court of California, County of Riverside, Case No. CVRI2101170 ("PAGA Complaint"). The PAGA Complaint was subsequently dismissed without prejudice, and the PAGA claim was added to the instant action. *See*, Moon Decl., ¶ 8.

On November 4, 2021, Plaintiffs amended the complaint in this Action, adding a cause of action for Civil Penalties Under PAGA [Cal. Lab. Code § 2699, et seq.] ("Original Complaint" or the "Complaint"). *See*, Moon Decl., ¶ 8.

### C.    Pre-Mediation Data Production and Analysis

Prior to the completion of formal discovery, the Parties agreed to mediate this matter. The Parties agreed to move forward with informal discovery for which the Parties adhered to a protocol for exchanging documents and information before the mediation. Defendant produced a sample of time and pay records for the putative Class Members, as well as policy manuals in effect during the statutory period, and additional documents. Defendant also provided information regarding the total number of current and former employees in its informal discovery responses. The data provided by Defendant consisted of tens and thousands of time entries and pay records, which was sufficient for Plaintiffs' counsel and expert to assess the strengths and weaknesses of the claims and to perform a thorough damages analysis. *See*, Moon Decl., ¶ 10.

After reviewing the documents regarding Defendant's wage and hour policies and practices, and analyzing Defendant's time and pay records, Class Counsel was

1  able to evaluate the probability of class certification, success on the merits, and

2  Defendant's maximum monetary exposure for all claims. With the aid of a statistics

3  expert retained to analyze the records produced, Class Counsel prepared a damage

4  analysis prior to mediation. Class Counsel also investigated the applicable law

5  regarding the claims and defenses asserted in the litigation. Thus, Plaintiffs and their

6  counsel's familiarity with the facts of the case and the legal issues raised by the

7  pleadings allowed them to act intelligently in negotiating the Settlement. *See*, Moon

8  Decl., ¶ 11.

9    **D.    Mediation and Settlement**

10    On July 22, 2022, the Parties participated in private mediation with professional

11  neutral mediator Lisa Klerman, Esq. The settlement negotiations were at arm's length

12  and, although conducted in a professional manner, were adversarial. The parties went

13  into the mediation willing to explore the potential for a settlement of the dispute, but

14  each side was also prepared to litigate their or its position through trial and appeal if a

15  settlement had not been reached. After extensive negotiations and discussions

16  regarding the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses,

17  a settlement was reached by the Parties. *See*, Moon Decl., ¶ 12.

18    After the agreement to settle, counsel for the Parties met and conferred

19  extensively over the detailed terms of the settlement for purposes of finalizing a long-

20  form settlement agreement and corresponding notice documents. Several drafts and

21  revisions were circulated in order to arrive at the final settlement—the Class Action

22  and PAGA Settlement and Release. The Settlement Agreement was fully executed on

23  December 22, 2022. *See*, Moon Decl., ¶ 13, Exhibit 1.

24  **V.    THE SETTLEMENT MERITS FINAL APPROVAL**

25    The law favors settlement, particularly in class actions and other complex cases,

26  where substantial resources can be conserved by avoiding the time, cost, and the rigors of

27  formal litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

28  These concerns apply in a case such as this, where allegedly wrongful practices potentially

affected numerous employees, in relatively small amounts.

Any settlement of class litigation must be reviewed and approved by the court. This is done in two steps: (1) an early (preliminary) review by the court, and (2) a final review after notice has been distributed to the class for their comment or objections. The *Manual for Complex Litigation Second* states at § 30.44 (1985):

> A two-step process is followed when considering class settlements … if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

When parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

"The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (6th Cir. 1980) [quoting Manual for Complex Litigation s 1.46, at 53-55 (West 1977)]. "[T]he district court must assess whether a class exists," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003), *i.e.*, whether the lawsuit qualifies as a class action under Rule 23. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)).

At the second stage of the approval process, after class members have had an opportunity to object to the settlement, the court makes a final determination whether the

settlement is "fair, reasonable and adequate" under Rule 23(e).  *Armstrong*, 616 F.2d at 314; *see Staton*, 327 F.3d at 952; *see also* Rule 23(e)(C)(1), which provides that a court may finally approve a settlement of a class action if it finds after a hearing that the settlement is "fair, reasonable, and adequate" and Rule 23(e)(C)(4), which provides that any class member may object to a proposed settlement.

## A. Plaintiffs' Claims Merit Class Action Treatment for Settlement Purposes

In determining the propriety of class certification, a court may not delve into the underlying merits of the claims.  The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

The Ninth Circuit has established that, when ruling on the propriety of class certification, a district court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  A court "may not require plaintiffs to make a preliminary proof of their claim; it requires only sufficient information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598, 600 (N.D. Cal. 1993).  Under these standards, this action meets the requirements for certification under Rule 23(a) and Rule 23(b)(3).

### 1. Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable."  In determining whether joinder would be impracticable, a court may consider not only the sheer number of class members, *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (numbers alone may be dispositive), but also "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." *Wang v. Chinese Daily News*, 231 F.R.D. 602, 606 (C.D. Cal. 2005).  "A class action may proceed upon estimates as to the size of the proposed class." *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986). *See also, In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (class certified

where plaintiffs did not establish exact size, but demonstrated that class would "obviously be sufficiently numerous").

In this action, the Class is composed of 936 individuals. *See*, Moon Decl., ¶ 33; Gomez Decl., ¶ 11. It is sufficiently numerous that the individual joinder of all members is impracticable.

### 2.    Commonality and Predominance of Common Issues

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This commonality requirement is "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). A plaintiff need not demonstrate that all questions of fact and law are common. "The existence of shared legal issues with divergent factual predicates is sufficient." *Id.* Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie,* 524 F.2d at 901 n.17.

In this litigation, all Class Members have shared a common interest in determining: whether Defendant provided legally compliant meal periods and rest breaks to Class Members; whether Defendant paid employees for all time worked; whether Defendant timely paid final wages upon termination; whether Defendant violated the itemized wage statement provisions of Labor Code § 226 by not providing accurate information as to wages; and whether Defendant's policies and practices violated California Business & Professions Code §§ 17200 *et seq*.

Given the permissive standard that courts in the Ninth Circuit employ when determining commonality, certification of the Class for settlement purposes is appropriate as Rule 23(a)(2) is satisfied.

Once it is established that common issues of law or fact exist, for Rule 23(b)(3) purposes, the Court next examines whether those common issues predominate. The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Central to predominance is "the notion that the

adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc*., 253 F.3d 1188, 1189 (9th Cir. 2001). When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. It is well settled that the need for determining differing amounts of damages suffered by different class members does not preclude class certification. *See*, *Blackie*, 524 F.2d at 905; *Wang*, 231 F.R.D. at 613.

There are common issues that may predominate over individual issues in this litigation. For example: (1) whether Defendant uniformly failed to provide Class Members with legally compliant meal periods and rest breaks; (2) whether Defendant required or permitted employees to work off the clock; (3) whether Defendant provided putative Class Members with itemized wage statements that were inaccurate in violation of Labor Code § 226; and (4) whether Defendant failed to pay all overtime wages due and payable to former employees within the times specified under the California Labor Code.

### 3.    Typicality

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the class." This factor is also construed permissively. *See Hanlon*, 150 F.3d at 1019-20. Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical." *Id*. at 1020. In other words, named plaintiffs need not be "identically situated" with all other class members. "It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).

Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The typicality requirement is satisfied where "the named Plaintiffs raise the same Labor Code violations as other putative class members." *Id*. Here,

Plaintiffs are raising the same claims as the putative class members and have alleged no other individual claims in this matter. *See*, Moon Decl., ¶ 36; Declaration of Jesus Mendoza ("Mendoza Decl.") ¶¶ 5-6; Declaration of Cesar De La Rosa ("DLR Decl."), ¶¶ 5-6.

### 4.    Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation turns on whether a named plaintiff and his counsel "have any conflicts of interest with other class members," and whether a named plaintiff and his counsel will "prosecute the action vigorously on behalf of the class." Adequacy may be established by the mere fact that counsel are experienced practitioners. *Hanlon*, 150 F.3d at 1020.

There are no conflicts of interest between Plaintiffs and Class Members, and Plaintiffs have both shown and expressed their willingness to represent Class Members. *See*, Mendzoa Decl., ¶ 7; DLR Decl., ¶ 7. The similarity of the claims asserted and remedies sought by Class Members and Plaintiffs do not suggest any divergent interests held by Plaintiffs. Defendant did not assert unique defenses against Plaintiffs that it could not assert against any other Class Member. Also, there are no conflicts with Plaintiffs' counsel.

Plaintiffs' counsel has substantial class action experience and can adequately represent the Class. They have been appointed class counsel in many wage and hour class actions against major employers. *See*, Moon Decl., ¶¶ 38-54.

### 5.    Superiority

In deciding whether to certify a class for settlement purposes, a court considers the following factors to determine whether a class action is superior: (a) class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (c) the desirability or undesirability of concentrating the

litigation of the claims in the particular forum.[2]  Some courts have found that the third Rule 23(b)(3) factor is "conceptually irrelevant in the context of a settlement."  See *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005).  "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747, at *19 (M.D. Fla. 1998).

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court compares a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that it satisfies the superiority requirement.  *See Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").  "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartender Trust Fund*, 244 F.3d at 1163.  In *Culinary/ Bartender Trust Fund*, the Ninth Circuit held that the "case involve[d] multiple claims for relatively small sums" and that the class action clearly served as the only method that would "'permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'"  *Id*. at 1163.

The class action is superior here as it is on the only method that will allow Class Members "to pool [their individual] claims which would be uneconomical to litigate individually."  *Id.*

The factors articulated in Rule 23(b)(3)(A), (B) and (C) also favor class certification.  It is difficult to believe that any Class Members have an interest in individually controlling the prosecution of separate actions, given the relatively small sums involved for any one Class Member.  Any Class Member who wants to pursue a separate action can opt out of the Settlement.

---

[2] Rule 23(b)(3)(A)-(C). When a court reviews a class action settlement, it does *not* consider Rule 23(b)(3)(D), the fourth factor, regarding difficulties of managing a class action. *Amchem Products Inc. v. Woodward* (1997) 521 U.S. 591, 620 (in deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems").

Also, it is desirable to concentrate the issues in this forum.  The Settlement allows all individuals to resolve similar claims against Defendant through a process that does not even require the submission of a claim form.

**B.**  **The Settlement Falls Squarely Within the Range of Reasonableness and Should Be Finally Approved**

No single criterion determines whether a class action settlement meets the requirements of Rule 23(e).  The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important.  *See, Staton*, 327 F.3d at 959.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "'an amalgam of delicate balancing, gross approximations and rough justice.'"  *Id*. at 625.  The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole."  *Staton*, 327 F.3d at 961.

As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective.  *Officers for Justice*, 688 F.2d at 625.  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Id*.  Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self interest."  *Staton*, 327 F.3d at 961.

There is a presumption that the negotiations were conducted in good faith.  Newberg, §11.51; *Pridd v. Edelman*, 883 F.2d 438, 447 (6th Circuit 1989); *Mars Steel*

*Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.  *Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990); *In re Armored Car Anti-Trust Litigation*, 472 F. Supp. 1357 (N.D. GA 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (E.D. PA 1978). The fact that settlement results from arms-length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, *5 (N.D. Cal. 1997); *See In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).

Here, the Parties reached a non-collusive settlement after discovery and extended negotiations. *See*, Moon Decl., ¶¶ 10-13. The settlement was finally reached after a day of arm's length negotiations before Lisa Klerman, Esq., a highly-respected mediator skilled at helping parties attempting to negotiate reasonable settlements in wage and hour class actions. *See*, Moon Decl., ¶ 12. Obtaining class certification and establishing liability posed significant hurdles for the class that justified the settlement.  The Stipulation falls within the range of reasonable outcomes and merits approval under Rule 23(e). *See*, Moon Decl., ¶ 23.

### 1.    The Value of the Settlement to Class Members Is Fair, Reasonable and Adequate

The Parties reached a Settlement in good faith after negotiating at arm's length with a professional mediator.  *See*, Moon Decl., ¶ 23. Settlement occurred only after discovery commenced and additional information was shared prior to mediation (including detailed time records for a sample of putative class members).  The information produced in discovery, and the additional data about class composition produced for mediation, were sufficient to permit Plaintiffs' counsel to adequately evaluate the settlement. And, notably,

approval of a class action settlement does not require that discovery be exhaustive.  *See, e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).  The fact that settlement results from arms length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997).

With respect to the claims asserted on behalf of the Settlement Class in this case, there are significant risks that support the reduced compromise amount. These risks include, but are not limited to: (i) the risk that Plaintiffs would be unable to establish liability for allegedly unpaid straight time or overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39 & fn. 33 (2014) ("*Duran*"), *citing Dilts v. Penske Logistics, LLC* 2014 WL 205039 (S.D. Cal. 2014) (dismissing certified off-the-clock claims based on proof at trial); (ii) the risk that Defendant's challenged employment policies might not ultimately support class certification or a class-wide liability finding, *see*, *Duran*, 59 Cal. 4th at 14 & fn. 28 *(*citing Court of Appeal decisions favorable on class certification issue without expressing opinion as to ultimate viability of proposition); (iii) the risk that uncertainties pertaining to the ultimate legality of Defendant's policies and practices could preclude class-wide awards of statutory penalties under Labor Code §§ 203 and 226(e); (iv) the risk that individual differences between Settlement Class Members could be construed as pertaining to liability, and not solely to damages, *see*, *Duran*, 59 Cal. 4th at 19; (v) the risk that any civil penalties award under the PAGA could be reduced substantially by the Court in its discretion, *see*, Labor Code § 2699(e)(1); (vi) the risk that class treatment could be deemed improper as to one or more claims except for settlement purposes; (vii) the risk that lengthy appellate litigation could ensue, (viii) the substantial risk that differences in the work experiences of employees assigned to different client locations would make both certification and proof of liability prohibitively unlikely.  *See*, Moon Decl., ¶ 25. Defendant strongly denies any liability and the propriety of class certification for any reason other than settlement.  *See*, Moon Decl., ¶ 9. Continued

litigation of this lawsuit presented Plaintiffs and Defendant with substantial legal risks that were (and continue to be) very difficult to assess.

In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable recovery for the Settlement Class Members. *See*, Moon Decl., ¶¶ 23-25; 34-36. The settlement amount is, of course, a compromise figure. By necessity it took into account risks related to liability, damages, and all the defenses asserted by the Defendant. *Id*. Moreover, each Settlement Class Member has been given the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this Settlement, to pursue their own claims. For the approximately 936 members of the Class, the average net benefit of approximately $374.01 per class member. *See*, Moon Decl., ¶ 33. The value of this amount reflects a fair compromise well within the range of reasonableness. Given the strong case that Defendant could bring to bear to challenge certification and liability, this is not an inconsequential sum. And, confirming the fundamental fairness of the settlement, each Class Member will be compensated on a pro rata basis, based on the number of workweeks they that they worked in a relevant position during the Class Period. *See*, Moon Decl., ¶ 33; Settlement, ¶ 42.

The Gross Settlement Amount of **$635,000.00** is about **83.4%** of the **$761,028.39** estimate of *risk-adjusted* recovery (excluding interest) at *this* stage in the litigation. While Plaintiffs would certainly have preferred to recover more (and Defendant would have preferred to pay less), this outcome is in line with a carefully constructed estimate of the current fair value of the case. *See*, Moon Decl., ¶¶ 26-32. On that basis, it would be unwise to pass up this settlement opportunity. The maximum damage values are estimates based on average wage rates, numbers of employees, and the amount of time covered by the Class Period. *See*, *id*.

After analyzing the claims in this matter, Plaintiffs have concluded that the value of this Settlement is fair, adequate and reasonable. *See*, Moon Decl., ¶¶ 34-36. The risk-adjusted value of each claim, on a claim-by-claim basis, is as follows:

- The estimated exposure for off-the-clock work over the Class Period was calculated to be $2,404,105.00 (assuming 15 minutes of off-the-clock work each shift due to COVID screenings and waiting in line to clock in).  With risk factor discounts for certification, liability proof, and other risks, the current value of that claim is estimated by Plaintiffs' counsel to be only **$240,410.50** (which represents a 90% discount). *See*, Moon Decl., ¶ 27.

- The reasonably estimated exposure for meal break violations over the class period was calculated at $1,936,194.46 before any risk reductions. However, with low chances of certification and proof of liability, and due to the fact that this amount did not take into account the existence of meal period waivers while 87.6% of violations occurred in shifts with waivable meals, Plaintiffs' counsel arrived at a risk-adjusted exposure of **$96,809.72** (representing a 95% discount).  *See*, Moon Decl., ¶ 29.

- The reasonably estimated exposure for rest break violations over the class period was calculated at $3,359,962.36 (based on an estimate that the violation rate amounted to 50%), but with low chances of certification and proof of liability, Plaintiffs' counsel arrived at a risk-adjusted exposure of **$167,998.12** (representing a 95% discount).  *See*, Moon Decl., ¶ 30.

- Performing risk-adjusted valuations for all claims yields a total value in the range of only **$505,218.34,** excluding PAGA and statutory penalties. *See*, Moon Decl., ¶ 32. PAGA penalties were calculated as having a maximum realistic exposure of $1,104,800.00 (based on assessing $100 penalty per pay period), but a risk adjusted value of **$55,240.00**, factoring in risks of reduction in penalties pursuant to the Court's discretion and the high risk of the inability to prove violations for all aggrieved employees.  *See*, Moon Decl., ¶¶ 31-32.

- Risk-adjusted penalty recoveries for wage statement and Labor Code § 203 penalties were estimated to be approximately **$53,457.50** and **$147,112.55**,

respectively, from maximum exposures of **$1,069,150.00** and **$2,942,251.00**, respectively (not only are the Section 203 and 226 penalties entirely dependent on the success of the off-the-clock claim, they both must also overcome the defense that Defendant did not intend any underpayment; additionally, the 226 penalty has a one-year statute). *See*, Moon Decl., ¶ 32.

This result here is fully supportable as reasonable. First, rest break and meal period claims have been challenging to certify for many years, even after *Brinker*[3]. Second, off-the-clock claims have proven to be extremely difficult to certify by their very nature. In this case, the difficulty of certifying and proving off-the-clock and meal period claims is compounded by the practice of having employees enter their own times manually in a timekeeping system which they confirm as accurate each week. Third, certification rates are lower than conventional wisdom holds. *See*, *e.g*., H. Scott Leviant, *Second Interim Report on class actions in California sheds new light on certification* (February 19, 2010), www.thecomplexlitigator.com, available at http://www.thecomplexlitigator.com/post-data/2010/2/19/second-interim-report-on-class-actions-in-california-sheds-n.html; *see also*, *Findings of the Study of California Class Action Litigation*, 2000-2006, available at http://www.courtinfo.ca.gov/reference/documents/class-action-lit-study.pdf (finding, as part of a study conducted by the Judicial Council of California, at page 5, and in Table 9, at page 15, that only 21.4% of all class actions were certified either as part of a settlement ***or*** as part of a contested certification motion). *See*, Moon Decl., ¶ 34. Given that well under 20% of all cases filed in California as proposed class actions are ultimately certified by way of a contested motion, and a similar trend is seen in federal courts, it is fair to say that, if anything, the use of high estimates for certification *overstates* the realistic current claim value. It would also be appropriate to evaluate the result by examining only the

---

[3] *Brinker Rest. Corp. v. Superior Ct.,* 53 Cal. 4th 1004 (2012), which held that employers do not need to affirmatively ensure that no work is performed during meal breaks.

premium wages at issue, excluding penalties and interest.[4]  Under that metric, the settlement recovered an amount approximately equal to 8.2% of the realistic unreduced claim value for the premium wages at issue (wages, and meal and rest period premiums). *See*, Moon Decl., ¶ 34. Viewed either way, this Settlement achieves the goals of the litigation.

By obtaining reasonable value for their claims in light of the substantial risks of litigation, Plaintiffs clearly achieved a fair settlement that merits approval, particularly in light of the risks posed by further litigation.

### 2.    The Agreed Upon Fees and Costs Are Reasonable

#### a)    *Plaintiffs seek reasonable fees.*

While a separate motion addresses Plaintiffs' requests for attorney's fees, costs, and enhancement awards, Plaintiffs briefly address the reasonableness below.

The compensation sought for Plaintiffs' counsel is also fair and reasonable.  The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should begin with a "benchmark" percentage of the total fund.  *See*, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  The percentage can be adjusted upwards where the risks overcome, the benefits obtained and the work necessary to achieve those results supports such an adjustment of the benchmark.

Here, the Settlement Amount is $635,000.00. Plaintiffs' counsel has agreed to seek

---

[4] The exclusion of interest and penalties from the fairness evaluation is proper because, first, PAGA penalties are discretionary (*see* Lab. Code § 2699(e)(2) (the court in its discretion "may award a lesser amount than the maximum civil penalty amount specified by this part…")), and, second, courts evaluate the strength of a proposed settlement without taking potential penalties or interest into consideration.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 955 (9th Cir. 2000); *see also Miller v. CEVA Logistics U.S.A., Inc.*, 2015 WL 729638, at *7 (E.D. Cal. Feb. 19, 2015) (court utilized calculation of a defendant's exposure exclusive of interest and penalties to determine whether the settlement fell within the range of possible approval).

no more than **$211,645.50** in fees, which is appropriate in light of the quality of the result and the benchmark standard. *See*, Moon Decl., ¶¶ 58-62.

<i>b)    Plaintiffs seek only actual costs.</i>

Plaintiffs' counsel also requests actual costs incurred and paid without reimbursement in the litigation of this Action, not to exceed $18,000.00.  The actual costs requested are **$15,625.40**, which is well below the cap. *See*, Moon Decl., ¶ 18.

<b>3.    The Service Payments Are Reasonable</b>

Service payment awards serve to reward a named plaintiff for the time and effort expended on behalf of the class, and for exposing herself to the significant risks of litigation. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).  In *Coca-Cola*, for example, the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class.  *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

Here, Plaintiffs' counsel requests that the Court grant Plaintiffs service awards of $5,000.00 each.  The amount of the service awards is reasonable given the risks undertaken by Plaintiffs.  Taking the risk of filing a lawsuit against an employer deserves reward.  Additionally, Plaintiffs were actively involved in the litigation and settlement negotiations of this Action.  And Plaintiffs worked diligently with counsel to prepare the action and conferred with counsel regarding settlement negotiations.  (Moon Decl., ¶ 72-75; Mendoza Decl., ¶¶ 10-12; DLR Decl., ¶¶ 10-12.) The requested amount is reasonable. Plaintiffs will also provide a general release as a condition of the enhancement, which further supports reasonableness.

1

### 4.    The Costs of Administration Are Reasonable

Simpluris Class Action Settlement Administration, an experienced third-party administrator, was appointed to administer the notice and settlement distributions in this matter. *See*, Moon Decl., ¶ 19.  Performing in all respects as required by the Agreement to date, the final cost of administration, including future work, is $11,857.00. See, Gomez Decl., ¶ 17. Administration of this Settlement for 938 Class Members (including the Class Members that requested to be excluded) occurred without any issues to date. *See*, Gomez Decl., ¶¶ 3-17. Simpluris will continue to perform services for the Settlement Class Members when it completes the calculation and distribution of payments made under the Settlement.

## VI.    <u>CONCLUSION</u>

Plaintiffs negotiated a settlement that resolves claims and recovers money for 936 Settlement Class Members.  This Settlement is fair and reasonable, especially given the claims and the potential defenses to them and to class certification.  Plaintiffs ask the Court to grant final approval of the Settlement, grant the motion for an award of fees and costs set for hearing concurrently, and adopt the proposed order submitted herewith that resolves both motions.

Respectfully submitted,

Dated:  June 30, 2023        **MOON & YANG, APC**

By: *s/ Allen Feghali*
Kane Moon
Allen Feghali
Enzo Nabiev
Sohyun Oh

Attorneys for Plaintiffs JESUS
MENDOZA and CESAR DE LA ROSA